# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D17-2487

_____

THOMAS JOHN POPE,

    Appellant,

    v.

STATE OF FLORIDA,

    Appellee.

_____

On appeal from the Circuit Court for Duval County.
Marianne L. Aho, Judge.

June 8, 2018

WINSOR, J.

In 2012, the Florida Legislature found it was "in the public interest to encourage a person who is aware of or present during another individual's drug overdose to seek medical assistance for that individual." Ch. 2012-36, Laws of Fla. The Legislature therefore enacted the "911 Good Samaritan Act," which provides that anyone "acting in good faith who seeks medical assistance for an individual experiencing a drug-related overdose" is immune from prosecution for drug possession if the evidence "was obtained as a result of the person's seeking medical assistance." § 893.21(1), Fla. Stat. (2016). The issue in this case is whether that statutory immunity reaches Thomas Pope, who sought medical help for a young woman overdosing on heroin.

Many facts are disputed, but the pertinent ones are not. Because neither side asks us to disturb the trial court's factual findings, our obligation is to apply the law to those findings, which means our review is de novo. *See Cuervo v. State*, 967 So. 2d 155, 160 (Fla. 2007).

In December 2016, Thomas Pope and two friends were doing heroin together at Pope's home. One of the friends, a young woman named Ashley, overdosed and stopped breathing. Pope immediately got on the phone with 911, providing his address and seeking help. He answered the 911 operator's questions regarding Ashley's condition, and he followed the operator's instructions to monitor her breathing and tilt her head to open her airway. Emergency responders quickly arrived, recognized symptoms consistent with a heroin overdose, and successfully administered a medication to counteract the effects. Ashley survived.

Despite some admirable efforts to save his friend, Pope's conduct was far from exemplary. At some point after the 911 call but before responders arrived, Pope moved Ashley to the front porch, leaving her briefly unattended. He tried to hide the heroin and rearranged things inside the home. When emergency responders arrived, he initially refused to answer the door, and when he finally did, he did nothing to help them help his friend. He denied knowing Ashley, saying he had no idea where she came from or what she had taken. He was belligerent, somewhat aggressive, and entirely uncooperative.

The State charged Pope with possession of heroin and marijuana, both of which were found inside the home. Pope moved to dismiss under the 911 Good Samaritan Act, arguing that because authorities found the drugs only because of his seeking medical treatment in good faith, he could not be prosecuted. The court held an evidentiary hearing and denied the motion. The court found the whole episode was a "fluid situation" that involved some good faith and some bad faith. It explained that although Pope may have acted initially in good faith when seeking medical assistance, he was later *not* acting in good faith when he was "making things more difficult" for the responders.

After the court denied Pope's motion, he pleaded guilty, specifically reserving the right to appeal the denial of his

dispositive motion. *See* Fla. R. App. P. 9.140(b)(2)(A)(i). The court imposed a fifteen-month sentence, and Pope now appeals the order denying immunity.

It is undisputed that Pope contacted 911 for no reason other than to "seek[]medical assistance for an individual experiencing a drug-related overdose." *See* § 893.21(1). And it is undisputed that evidence of Pope's drug possession "was obtained as a result of [Pope's] seeking medical assistance." *See id.* The only issue on appeal is whether Pope acted in good faith in seeking the assistance. *See id.* (limiting immunity to "[a] person *acting in good faith* who seeks medical assistance") (emphasis added).

Pope argues that by providing the 911 operator with Ashley's location and condition, and then following the operator's instructions in rendering medical aid, he met the statute's "good faith" requirement. The trial court's contrary conclusion—and the State's argument on appeal—relate more to what Pope did *after* he sought medical assistance. The State argues (correctly) that Pope could have and should have done more. But the Legislature did not condition immunity on doing more than seeking medical assistance in good faith. The Legislature could have imposed more conditions. Indeed, other legislatures have. *See, e.g.*, W. Va. Code § 16-47-4 (2015) (limiting immunity to those who "[c]ooperate[] with and provide[] any relevant information requested by emergency medical assistance personnel or law-enforcement officers needed to treat the [overdosing] person"); Cal. Health & Safety Code § 11376.5 (West 2013) (limiting immunity to those who do "not obstruct medical or law enforcement personnel"); Del. Code. Ann. tit. 16, § 4769 (West 2013) (limiting immunity to those who "provide[] all relevant medical information as to the cause of the overdose . . . when a medical provider arrives").

Regardless of whether Pope should have behaved better, his purpose in contacting 911 was to save his friend. That was a good-faith purpose. Under a plain reading of the 911 Good Samaritan Act, we conclude Pope was "[a] person acting in good faith who [sought] medical assistance." § 893.21(1). The Act therefore gave him immunity from prosecution, so the trial court erred in denying the motion to dismiss.

REVERSED.

3

MAKAR and WINOKUR, JJ., concur.

_____

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

_____

Andy Thomas, Public Defender, and Steven L. Seliger, Assistant Public Defender, Tallahassee, for Appellant.

Pamela Jo Bondi, Attorney General, and Steven E. Woods, Assistant Attorney General, Tallahassee, for Appellee.